STATE *v.* OSCAR MEYER, *alias* OSCAR VON BLU-MENTHAL.

*Criminal Law. Murder.* R. L. s. 4086.

1. JUROR, QUALIFICATION OF—OPINION. An expressed opinion, founded on reports in newspapers of evidence given at a preliminary examination of a respondent, does not disqualify a juror, when his opinion was dependent upon the correctness of the reports. To disqualify there must be an abiding bias in the mind, based upon the substantial facts in the case, in the existence of which the juror believes.

2. REASONABLE DOUBT. The respondent requested the court to charge the jury that "if they believe that the evidence, upon any essential point in the case, admits of the slightest doubt consistent with reason, the prisoner is entitled to the benefit of that doubt and should be acquitted." The court instructed the jury that if they "believe that the evidence, upon any essential point in the case, admits of any reasonable doubt—a doubt consistent with reason—the prisoner is entitled to the benefit of it;" *Held*, no error.

3. JURORS JUDGES OF LAW. The court instructed the jury that they could adopt their own theory of the law, except they could not adopt a rule of law more prejudicial to the respondent than that laid down by the court; *Held*, that the charge was more favorable than the law to the prisoner, of which he could not complain.

4. DEGREES OF MURDER—EXPRESSION OF OPINION BY JUDGE. The respondent was liable to be found guilty of murder in the first or second degree, or manslaughter; *Held*, (a) that it was error for the court, in its charge to the jury, to define two of the crimes without defining the other; (b) that it was error for the court to express its opinion that, if the respondent was guilty, he was guilty of murder in the first degree; (c) that the court should have fully explained to the jury what constitutes each degree of murder and its distinguishing characteristics, so that they might have a correct standard by which to determine the degree.

State *v.* Meyer.

5. Presumption of Innocence. The presumption is first in favor of innocence, and then of the lesser crimes in their order, of which the respondent may be convicted under the indictment; and the prisoner is entitled to the benefit of any reasonable doubt which the jury may have as to the degree of murder.

Indictment for murder. Trial by jury, April Term, 1885, Royce, Ch. J., presiding. Verdict, guilty.

The following are some of the questions put to the jurors, and their answers:

W. A. Cummings—By respondent's counsel: Q. Whether or not you have heard this matter discussed, and the facts narrated, and read the reports of evidence published in the St. Albans *Messenger?* A. Yes, sir; I read the St. Albans *Messenger* every week, and presume I read that evidence; I have read the *Messenger.*

Q. Whether or not, from what you have heard or read, you have formed an opinion in regard to the guilt or innocence of the accused? A. I formed the opinion like this, so far as these statements were concerned, " It looks dark for him."

Q. Whether or not you expressed that opinion? A. I don't remember that I have, and yet I might.

Q. Did you talk it over with your family or neighbors? A. I would speak of it as people are in the habit of speaking of those things, but to no great extent, as I remember; such things are common topics of conversation with me, as with other men.

Q. You think you might have expressed an opinion? A. I might possibly, I can't say.

Q. You don't remember?

Mr. Buck: We think that brings Mr. Cummings within the general rule.

The Court: We should make the same ruling as with reference to the other jurymen. [Exception by respondent's counsel.]

M. J. Olds—By respondent's counsel: Q. I will make the same inquiry of you, Mr. Olds. A. I presume I have

read all that has been published in the county papers, and perhaps something in some others, in relation to this case.

Q. Whether or not, from what you read and heard, you formed some opinion in regard to the guilt or innocence of the accused? A. It would be a very natural thing for a man to do, to form an opinion from the evidence he had in the case.

Q. Whether or not you expressed that opinion? A. I presume very likely I have, but I don't remember it.

Q. You presume you have? A. I presume I have.

The Court: Are you conscious at this time of having any prejudice against this respondent or in his favor? A. No, sir; I don't think that I have.

Q. Do you know any reason why you cannot try this case, upon the evidence that may be submitted to you in court, fairly and impartially? A. I do not.

The Court: We make the same ruling with reference to him. [Exception by respondent's counsel.]

The other facts are sufficiently stated in the opinion of the court.

*F. W. McGettrick*, for the respondent.

The case of *State* v. *Hayden*, 51 Vt. 296, came up on a petition for a new trial, and is in no sense an authority. The court distinguishes between that case and *State* v. *Clark*, 42 Vt. 629, which latter case is an authority against the ruling of the court in not excusing the jurors. *State* v. *Clark* is approved in *State* v. *Hayden*. In *State* v. *Meaker*, 54 Vt. 112, the court say: " The newspaper reports may be of such a character,—as, for instance, the publication of the evidence given on a former trial, or of such a detailed account of the facts and circumstances of the case,—that an opinion founded or expressed thereon would and should disqualify."

Eight of the jurors in this case had read the full report of the preliminary examination before the justice, published

in the newspaper. The court's definition of murder and manslaughter was calculated to obscure the understanding of the jury as to the distinction between murder in the first and second degree. It was also error for the court to tell the jury that, in its judgment, it was clearly a case of murder in the first degree. The court should have first pronounced the prisoner innocent until he was proven guilty; and then, after it was shown that he had committed a homicide, looked for every excuse which might reduce the guilt to the lowest point consistent with the facts proven. *State v. McDonnell,* 32 Vt. 491.

*G. W. Burleson* and *A. A. Hall,* for the State.

The formation and expression of such an opinion as these jurors had, furnish no ground of challenge for cause. *State v. Phair,* 48 Vt. 377; *State* v. *Tatro,* 50 Vt. 489; *State* v. *Meaker,* 54 Vt. 119; *Cox* v. *People,* 80 N. Y. 500.

The charge of the court as to "reasonable doubt" was correct. 1 Greenl. Ev. s. 81; *State* v. *Patteson,* 45 Vt. 316; *Commonwealth* v. *McKie,* 1 Gray, 61; *Costley* v. *Commonwealth,* 118 Mass. 1.

The fact that the court expressed its opinion, under the circumstances, was not error. *State* v. *Paddock,* 24 Vt. 312; *Sampson* v. *Warner,* 48 Vt. 247; *Sawyer* v. *Phaley,* 33 Vt. 69.

The opinion of the court was delivered by

WALKER, J. I. The respondent took exceptions to the decision of the County Court overruling his challenge for cause of the jurors, Nahum Brigham, W. A. Cummings, M. J. Olds, M. L. Whitcombe, F. C. Story, L. C. Lee, C. W. Peckham, W. Stanley, H. C. Roby, and Moses Pattee. Mr. Brigham and Mr. Roby were peremptorily challenged by the respondent, and the others were sworn and served as jurors on the trial.

A careful examination of the testimony of these jurors, given on *voire dire,* shows conclusively that the opinions

which they formed, and some say they may have expressed, were founded upon the reports which they had read in the St. Albans *Messenger* and other county papers, of evidence purporting to have been given upon the examination of the respondent at the time of his arrest and were dependent upon the correctness of these reports; which opinions, whether expressed by them or not, had not, in the judgment of these jurors, biased their minds so that they could not try the case impartially upon the evidence given in court, and return a verdict of conviction or acquittal thereon accordingly as their minds were convinced by it. The newspaper accounts which they had read had evidently made no abiding bias or conviction in the jurors' minds of the guilt or innocence of the respondent. The opinions which they had formed were merely passing or transitory inclinations of their minds, based upon such accounts as they had read; they had made no inquiry as to the truth of the accounts; they had made no investigation in reference to the crime imputed to the respondent for the purpose of satisfying their minds as to his guilt or innocence. Their opinions were such opinions merely as intelligent men almost irresistibly form from hearing or reading newspaper accounts of crime, relying upon the truthfulness of the published accounts, which are always subject to be changed and altered by contradictory accounts. Such opinions rarely disqualify intelligent men from fairly considering the evidence given on trial and rendering an impartial verdict thereon when called upon to act as jurors.

The question of the disqualification of a juror by the formation and expression of an opinion upon newspaper reports, etc., has repeatedly been before this court, and the law is well settled on that subject in this State. In *State* v. *Meaker*, 54 Vt. 112, Ross, J., in delivering the opinion of the court, says that the opinion in order to disqualify the juror "must be an abiding bias of the mind, based upon the substantial facts in the case in the existence of which

he believes. Such is the result of our decisions, and of the great majority of the decisions of the courts of last resort in other jurisdictions." * * * "Its character must be left largely to the determination of the court before which the trial is had, upon the evidence adduced at the preliminary examination." Following the trend of the decisions in this State and other decisions we are satisfied that the opinions of the jurors challenged for cause in this case were not of a disqualifying character.

II. The respondent, in his tenth request, requested the court to charge that, "If the jury believe that the evidence, upon any essential point in the case, admits of the *slightest* doubt consistent with reason, the prisoner is entitled to the benefit of that doubt, and should be acquitted."

In respect to this request the court, after having fully instructed the jury that the prisoner was entitled to the benefit of every reasonable doubt and having explained to the jury satisfactorily to the respondent what constituted a reasonable doubt, instructed the jury as follows: "That request is sound law, with this modification, if the jury believe that the evidence upon any essential point in the case admits of any reasonable doubt, a doubt consistent with reason, the prisoner is entitled to the benefit of it." To the court's refusal to charge in the language of the request, the respondent excepted.

The degree of doubt that has always been recognized by the law which the State must overcome in order to warrant the jury in finding the respondent guilty of the crime charged in the indictment, is one founded upon reason,—a reasonable doubt. The charge of the court modifying the request, if not a substantial compliance therewith, was in conformity with the law, and the respondent was not injured thereby. It was all he was entitled to. This is not an age in which the protection of the accused requires any lowering of this degree of doubt, which the law requires to be overcome in order to convict.

III. The respondent's counsel next claims error as to the refusal of the court to comply with his thirteenth request in regard to entertaining doubts as to questions of law. The request was: "If the jury entertain the slightest doubt upon the questions of law presented by the court, the prisoner is entitled to the benefit of such doubt and in no instance are they permitted to apply any rule of law more prejudicial to the prisoner than that laid down by the court."

The charge of the court in respect thereto was as follows: "While it is my duty to instruct you as to what I deem to be the law, yet it is your right to judge over me. You have a right to adopt your theory of the law instead of mine, if you think proper so to do, with this qualification, you are not to adopt any rule of the law any more prejudicial to the respondent than the law which has been laid down by the court."

No more favorable charge to the respondent could have been given upon the subject of the request. The jury were told that they could entirely ignore the court's view of the law and adopt their own, except that they could not adopt any rule more prejudicial to the respondent. The instruction did not even require the jury to have any doubt of the correctness of the court's view before rejecting it. He told them that they had the absolute right to adopt their own theory, provided it was not more prejudicial to the respondent than the court's view. The charge was clearly more favorable to the respondent than the request or the law, and he cannot complain.

There is no qualification of the right of the jury, in a criminal cause, to disregard the law as given them by the court, and adopt their own theory; and they may, in the exercise of this power, with the same propriety, adopt a rule of law more prejudicial to the respondent as well as one less prejudicial.

IV. The respondent, in his fifteenth request, requested the court to charge that, "if the jury should find that the

respondent killed Herman Krause, in the absence of any proof of malice or premeditation, they are at liberty to find him guilty of murder in the second degree, manslaughter, or to acquit him."

Upon the subject-matter of this request the court read to the jury the statute defining what constitutes murder in the first degree, and the statement of the statute that " all other kinds of murder shall be murder of the second degree," and told them what was the punishment for murder in each degree, and what for manslaughter, and then proceeded to explain to the jury what constitutes the crime of murder, using the following language, viz.: " We have to resort to the common law to ascertain the definition of murder, and that defines it, to be the unlawful killing, with malice aforethought, of any human being. In order to constitute the crime of murder, it must be committed with malice aforethought; the act must be done with intent to commit murder. The malice which the law requires to exist may be either express or implied; that is, either announced by some previous threats, or evidence of some ill-will that the party had towards the murdered person; or it may be implied from the circumstances under which the killing took place." * * * " The act of killing must be intentional; that is, the party must have intended to commit the deed; there must be premeditation, but there is no point of time in which this premeditation is required to exist. It may be for an hour, for a day, or for one moment. There must be evidence that he meditated the act before the act was done; that is what is required to constitute the crime of murder, in my judgment."

The court then explained to the jury the crime of manslaughter and wherein it differs from murder, and then, without explaining to the jury what constitutes murder in the second degree, or wherein murder in the second degree differs from murder in the first degree, he told the jury, that " under the indictment it is competent for you to convict the respondent of either one of these three offenses,—mur-

der in the first degree, murder in the second degree, or manslaughter. You have a right to do either. But I have no hestitation in saying to you, that, if this murder was committed—if you should find, beyond a reasonable doubt, that upon the evening of the 21st of January, this respondent fired that bullet into the head of that German, while they were alone upon Smith's Point, and death resulted from that shot, in my judgment, it is clearly a case of murder in the first degree. But still I say to you that it is your right to find him guilty of either one of these three crimes, and it is competent for you to acquit him entirely." Such was all the charge of the learned judge as to the degrees of murder and the verdict the jury had a right, under the law, to return upon the evidence. Without explaining to the jury at all the difference between murder in the first and second degrees, so that they could for themselves determine, from a consideration of the evidence, what degree of murder the respondent was guilty of, if guilty of murder at all, the learned judge tells them that, in his opinion, if the crime was committed, it was clearly a case of murder in the first degree. Yet it was for them to determine from the evidence, what degree. With the charge standing as it was left, without explanation as to what constitutes murder in the second degree, this emphatic expression of the judge was equivalent to an instruction that, if the jury found the respondent was guilty of murder, he was guilty of murder in the first degree. They had been given by the court no criterion of determining for themselves whether the evidence showed the respondent guilty of murder in the first degree or second degree. If it was the right of the jury, upon the evidence, to find the prisoner guilty of either one of the three offenses named, as the court told them it was, then it was the duty of the court to instruct the jury fully as to what constituted each offense, so that they might have a correct standard by which to determine the degree, when they had found the facts from the evidence.

The reading of the statute, declaring what was murder in the first degree, and that all other kinds of murder shall be murder of the second degree, was not a sufficient explanation of the two degrees. The jury, from that reading without explanation, would have no appreciation of the distinguishing characteristics of the two degrees, which has confessedly been something of a puzzle to lawyers and judges. How many would understand, from the reading of the statute defining the first degree of murder and the phrase, " all other kinds of murder shall be murder of the second degree," what, in fact, constituted murder in the second degree? How many men, not read in the law, would understand from it, that murder in the second degree is the unlawful killing of a human being with malice aforethought, but without deliberation, premeditation, or preconcerted design to kill, and that the distinguishing feature of the two degrees rests in the absence of deliberation, premeditation, and preconcerted design from the second degree?

While the evidence in this case, with proper instruction to the jury as to the law applicable to murder in the second degree, would uphold a verdict of murder in the first degree, yet we think that the jury should have had a fair opportunity, on proper instructions to them, of determining for themselves whether the evidence was reasonably inconsistent with the theory that the killing of Krause was the result of malice suddenly provoked at the time, without deliberation, premeditation, or preconcerted design, which would be murder in the second degree. With a proper explanation to them of murder in the second degree, the jury, in their deliberations upon the evidence, might have warrantably reached a different result.

Under an indictment for murder, where the jury may convict the respondent of murder in the first degree, second degree, or manslaughter, the State, to convict of murder in the first degree, must first overcome by evidence the presumption of innocence that always shields the respondent

till the contrary is proved beyond a reasonable doubt; and, when that is overcome, the State must next overcome every reasonable doubt that the crime, which the respondent has committed, is not manslaughter nor murder in the second degree, advancing from the lesser to the greater crime; the presumptions being first in favor of innocence, and then of the lesser crimes in their order.

If, upon a proper explanation of murder in the first and second degrees, the jury might have had any reasonable doubt as to the degree of murder, the respondent was entitled to the benefit of it, as he was to the benefit of the reasonable doubt as to whether he is guilty of any crime at all under the indictment. And it is the duty of the trial judge to so fully instruct the jury upon every degree and kind of crime of which the respondent may be convicted under the indictment, as to give the respondent the benefit of having the evidence considered by the jury under a full knowledge of the law as to the essential characteristics of each kind and degree of crime for which a verdict may be returned against him, so that he may have the benefit of every reasonable doubt that may arise, both as to the commission of the crime and as to the kind and degree of it.

As an abstract proposition, the charge of the presiding judge, explaining simply what constituted murder at common law, is unexceptionable; but as applicable to this case, under our statute creating two degrees of murder, it was erroneous. The respondent was entitled to a full explanation to the jury of what constituted each degree of murder, and the distinguishing characteristics of each. This the learned judge wholly neglected to give, and as this neglect and omission might have been prejudicial to the respondent, it was error.

The respondent's exception to the refusal of the court to charge as requested in his fifteenth request, and to the charge as given upon the subject-matter of the request is sustained.

The other subjects involved in the points of defence as shown by the bill of exceptions, it is not necessary to consider.

The result is, the respondent's exceptions are sustained, verdict set aside and new trial granted.