## STATE *v.* JERRY BRADLEY.

*Murder in second degree. Malice. Evidence. Threats.*
*Exceptions.*

1. Upon a trial for murder a witness, not an expert, may be properly asked what the appearance of the respondent was when charged with the crime and denying the charge.

2. And if in answer to the accusation the respondent says that the deceased died of heart disease, when in fact she died of a stab in the heart, that may be shown.

3. Evidence that the respondent threatened to kill the deceased upon condition, is admissible when accompanied by proof that the condition has happened, although such threats were made six or eight months before the killing.

4. When an exception is to the charge of the court as given, and the error insisted upon is, not that the charge as actually given was erroneous, but that the court should have gone further, the exception will not be sustained, if it would have been the duty of the court in other parts of the charge to supply the claimed omission, and it does not affirmatively appear that the court failed to do so.

5. Murder in the second degree involves malice, but not premeditation; and an instruction that it wants the elements of both malice and premeditation is erroneous.

Indictment for murder. Trial by jury at the June term, 1890, Royce, Ch. J., presiding. Verdict of murder in the second degree. Exceptions by the respondent.

The respondent was indicted for the murder of one Maggie Mattison, who, although the wife of another man, had been living with the respondent for some two years before her death. The murder was committed at the house of one Dillworth. The evidence of the State tended to show that the death of the deceased was occasioned by a wound in the heart, inflicted by some

sharp-pointed instrument, and that it might have been made by a knife which was found in the possession of the respondent when arrested. The respondent testified that he obtained this knife from one White the day after the murder.

The only person present in the Dillworth house at the time of the murder were the deceased, the respondent White, Badger and Lyons. The deceased was in bed in one of the rooms. The respondent testified that Badger, Lyons and himself were in the adjoining room drinking; that he heard the deceased groaning and went into the room where she was; that when he entered the room White was there, but at once slipped into a closet; that he went to the deceased and found her dying, whereupon he called to Badger and Lyons.

Badger and Lyons testified that at the time of the killing they heard the respondent in the room with the deceased; heard him talking with her and threaten to murder her; heard her cry out, moan and gasp, and the respondent cry out to them that she was dying; that the respondent claimed to them that she died of heart disease.

In reference to the conduct of these parties soon after the murder one Cole was improved as a witness by the State and testified as follows:

"Q. You may state if you heard any conversation between him (Bradley) and any of the others who were there with reference to what was the matter with her (Mag Shea).

Ans. This Bolger would speak out once in a while and say that Bradley killed the woman, and then he would turn it off with, she died with the heart disease.

Q. When you say he turned it off, who do you mean?

Ans. Mr. Bradley.

Q. What was his appearance then?

Ans. It kinder seemed as though he didn't want it laid to him.

Objection by the respondent.

Court admits the evidence.

Exceptions saved by the respondent.

Q. If you can state any more fully about Mr. Bradley's

appearance when Bolger made this statement that Mr. Bradley killed the woman, you may do so.

Objection by the respondent.

Q. Did Bolger make these statements in Bradley's hearing ?·

Ans. Yes, sir ; we were all right there in the front yard.

Q. Now when he said that.,what was the appearance of Mr. Bradley ?

Objection by the respondent. The Court admits the evidence. Exceptions saved by the respondent.

Ans. He seemed to be kinder of worried that it should be laid to him and he would turn it off in this way, that she died of heart disease ; he said that she had had it and he had rubbed her an hour at a time to fetch her out of it and so on."

The State was allowed to show, against the exception of the respondent, that the respondent some six or eight months before the murder had threatened to kill the deceased if she left him, and that just previous to the killing she left him and refused to return.

The respondent also testified that the deceased had frequently threatened to take her own life and had attempted to do so by poison and with dangerous weapons, and he insisted that she might have inflicted upon herself the stab from which she died.

Upon this point the Court charged as follows :

" It is claimed by counsel in argument that that wound might have been self-inflicted. I have nothing further to say to you about that, gentlemen, unless to remind you that it is your duty to consider that proposition and if in your judgment there is any evidence to warrant the belief that she took her own life, then no one could be successfully accused of murder.

In passing upon that question the first thing you would look for would be to ascertain whether she had anything, any weapon with which she could have perpetrated the act. Did she have any such instrument, or was any such instrument found in the room or about her, as the physicians have described this stab was probably made with. I say this is a subject to which your attention would naturally be attracted, when it is claimed that she killed herself."

The respondent excepted to the charge upon the subject of suicide.

The Court in defining murder in the second degree used the following language, to which the respondent excepted :

" Under this indictment you may find him guilty of murder in the first degree, the definition of that is that the killing must have been wilful, malicious and premeditated, or you may find him guilty of murder in the second degree, and the principle distinction that I find between murder in the first degree and murder in the second degree is that in murder in the second degree the elements of premeditation and malice are wanting. In order to convict of murder in the first degree the man must have premeditated the act, it must have been intended, it must have been wilful. This premeditation may not have existed more than a minute, but still it must have been formed. There is no particular length of time within which he should have cherished the intention to kill his victim.

In murder in the second degree this premeditation and malice are lacking. It may be murder in the second degree where these are both wanting. I think you must understand this definition.

I might illustrate it by citing some instances where the distinction had been made, but I think if I have made myself plain that you must understand the difference between murder in the first and second degree."

*Sheldon & Cushman,* for the respondent.

The Court erred in permitting Cole to give his opinion of the respondent's appearance when charged with the crime. *Greenfield* v. *People,* 85 N. Y. 75 ; *People* v. *Fish,* 13 Crim. Law Mag. 400 ; *State* v. *Nash,* 7 Iowa 347 ; *Brownell* v. *People,* 38 Mich. 732 ; *Purgear* v. *State* (Tex.) 11 S. W. 929.

The Court's definition of murder in the second degree was wrong. *State* v. *Meyer,* 58 Vt. 466-67.

*O. M. Barber,* State's attorney, for the State.

Evidence of the appearance of the respondent when charged with the crime was properly admitted. *State* v. *Ward,* 61 Vt. 181 ; *State* v. *Miller,* 19 Pac. Rep. 50 ; 2 Stark. Ev. 36.

Also evidence of the respondent's threats to kill the murdered woman. *State* v. *Brown*, 18 Pa. 678.

The opinion of the court was delivered by

ROSS, Ch. J. I. On trial, the witness Cole, after having testified that soon after the homicide, Bolger, who was present at the time of the homicide, would speak out and say that Bradley, the respondent, killed the woman,—was asked, against the exception of the respondent, "what was his appearance then?" He answered first "It kinder seemed as though he didn't want it laid to him," and again, "He seemed kinder worried that it should be laid to him, and would turn it off in this way, that she died of heart disease; he said that she had it and he had rubbed her an hour at a time and fetched her out of it and so on." Witness was not an expert. It is contended that the question called upon the witness to give his opinion in regard to the appearance of the respondent. Whether the question called upon the witness to give his opinion, or to describe the appearance of Bolger it was admissible under our decisions. *State* v. *Ward*, 61 Vt. 153; *Bates* v. *Sharon*, 45 Vt. 474; *Crane* v. *Northfield*, 33 Vt. 124; *Stowe* v. *Bishop*, 58 Vt. 500; *Knight* v. *Smythe*, 57 Vt. 529.

Nor do we think the answers objectionable if a departure from the question. It was that the respondent appeared kinder worried, and the witness gave his reason, that the respondent sought to avoid the charge by falsely claiming that the deceased came to her death from a disease of her heart rather than by a stab in the breast. The answer was more a statement of an admissible fact than of the opinion of the witness. It is always permissible to show that the accused when charged with the commission of a crime denied the charge, by asserting a falsehood.

II. The conditional threats of the respondent to take the life of the deceased, proof tending to show that the condition

had transpired having been introduced,—was properly admitted. The fact that the threats were made six or eight months before the homicide went, not to the admissibility, but to the weight which the jury should give to such threats.

III.  The respondent excepted to the charge as to what the jury must find relative to suicide and to the charge upon that subject.   It is not now contended that the charge was erroneous so far as it was given, but it is contended there was error in the failure to charge that if the evidence of suicide was sufficient to raise a reasonable doubt whether the crime of manslaughter or murder had been committed, the respondent was entitled to the benefit of that doubt.  The exception taken, does not call the attention of the Court to any failure to charge, nor point out any such failure.   It only drew the attention of the Court to the charge given on this subject.   Hence the exception does not raise the error now insisted upon.   If the attention of the Court had been called to the error now contended for, the Court, doubtless, would have corrected the claimed omission, unless in other portions of the charge the Court had given the respondent the benefit of such doubt, however raised.   The case naturally required the Court to charge that to convict of any crime the evidence must establish that crime beyond a reasonable doubt. Such a charge would give the respondent the full benefit of the claimed omission.   With only a brief extract of the charge given and with the case calling upon the Court to charge fully upon the subject of the claimed omission, it will be presumed that the Court gave the required charge which would supply the claimed omission.   This exception is not sustained.

IV.  The respondent excepted to the charge defining murder in the second degree, and especially that the element of premeditation and malice must both be wanting to distinguish the crime from murder in the first degree.   The scope of this exception is that the Court's definition of murder in the second degree was erroneous.   After telling the jury, that to constitute murder

in the first degree, the killing must have been wilful, malicious and premeditated, the Court told the jury that in murder in the second degree the elements of premeditation and malice are wanting. This statement of what constitutes murder in the second degree was, in substance, repeated two or three times. It is not contended but that this definition was erroneous, in that it told the jury that the element of malice was wanting in murder in the second degree. Its error is fully demonstrated in *State* v. *Meyer*, 58 Vt. 457. Murder in the second degree is there defined to be "the unlawful killing of a human being with malice aforethought, but without deliberation, premeditation or preconcerted design to kill." From the charge as given it is difficult to comprehend, on evidence sufficient to establish only manslaughter, why the jury must not have convicted of murder in the second degree, the crime found by the verdict of the jury. But it is contended, for the State, that this error, in defining murder in the second degree, must have been cured, because it is stated, that the Court instructed the jury that under the indictment the respondent might be convicted of manslaughter and correctly defined the crime of manslaughter. The language in which the Court defined manslaughter is not given. If it was the same used in defining murder in the second degree, it left the jury free to convict of either crime, as they might judge best. If the language used in defining manslaughter was different from that used in defining murder in the second degree, although the language used in defining each was of the same legal significance, the jury thereby might have been misled to the injury of the respondent. The charge defining murder in the second degree being erroneous in not requiring full proof of all which is necessary to establish the crime of which the respondent was found guilty, the charge must be held both erroneous, and injurious to the respondent unless the exceptions clearly show that he could receive no injury from the error. This, the exceptions do not show.

*Exceptions sustained, sentence, judgment and verdict set aside, a new trial granted, and cause remanded.*