State *v.* Ward *alias* La Vigne.

---

STATE OF VERMONT *v.* JOHN WARD *alias* JEROME LA VIGNE.

*Criminal Law.    Jurors.     Challenges.     Evidence.     Handwriting. Experts.*

No exception could be taken to the decison of the county court in excusing a party from serving as a juror on the ground of his belonging to a fire company in Burlington, where the court was in session.

The declaration of a juror that he had conscientious scruples against rendering a verdict of guilty, where the punishment was death, sincerely made, is sufficient to excuse him from serving as a juror in such case.

State *v.* Ward *alias* La Vigne.

The "impartial trial" provided for in the 10th section of the constitution of the state in the prosecution of persons charged with crime, has reference to the impartiality of the trial in respect to the state as well as the accused.

Where in a murder trial one of the jurors declared he had conscientious scruples against rendering a verdict of guilty in a case where the punishment was death, and stated that he believed the law inflicting the punishment of death was wrong, but if compelled to sit as a juror in such case, if he was fully satisfied that the respondent was guilty, he would render a verdict of guilty, but felt that he was not, for the reason stated, a proper person to sit as a juryman in such case, and that it would require more evidence to induce him to render a verdict of guilty in a case where the punishment was death than where it was imprisonment, it was *held* that the question whether he should be excused or not was one of fact for the decision of the county court, and not revisable in the supreme court.

In criminal prosecutions where the guilt of the accused is sought to be established by proof afforded by comparison of handwriting, the sufficiency of the proof given of the genuineness of the papers offered as standards, is a preliminary point addressed to and in the first instance to be determined by the court, before permitting the papers to go to the jury. The court having adjudged the papers genuine, and having permitted them to go to the jury, it then becomes the duty of the jury, before making comparison of a disputed writing with them, to examine the testimony respecting their genuineness, and to decide whether it is established beyond a reasonable doubt; and upon this point they should require the same measure of proof as upon any other essential point in the case. And the court should instruct the jury, that if they do not find, by such measure of proof, that the papers offered as standards, are genuine, they should not be used as evidence against the prisoner.

In England it was long held that a comparison of handwriting was not admissible; but that rule was modified by more modern decision, and in 1854, there was a statutory enactment upon the subject substantially in accordance with the views, as above expressed.

A railroad ticket with the words "Jerome La Vigne, 93 River Street, Troy, N. Y.," written in pencil on the back, was taken from the respondent just before his arrest; and a ballad with the words, "John Ward, Canal Boat, S. F. Davis, Albany to Oswego," written in like manner, and taken from him at the time of his arrest, were held admissible as evidence and properly submitted to the jury, with testimony tending to show they were written by the respondent, they being important evidence upon the main issue in the case.

Where witnesses are introduced as experts as to identity of handwriting, the court should first determine whether they possess sufficient skill to entitle them to give an opinion as experts; and having decided that they are experts, it is admissible to allow them to compare the contested paper with the genuine, and give their opinion whether they were written by the same hand.

THIS was an indictment against Charles H. Potter and John Ward, *alias* Jerome La Vigne, for the murder of one Sally Griswold of

Williston, and upon trial by jury, at the April Term, 1866, PIER-POINT, Ch. J., presiding, the jury returned a verdict of *not guilty*, as to Potter, and a verdict of *guilty*, as to Ward, *alias* La Vigne.

Exceptions were taken to the decision of the court in excusing two jurors regularly drawn, summoned, returned and in attendance as jurors at said term of the court. The grounds upon which they were excused are set forth in the opinion of the court. Among the evidence offered by the prosecution were two letters dated respect-ively, September 22d, and September 30th, 1865, and signed "Jerome La Vigne," containing evidence against the respondent, if they were written by him. In order to prove the handwriting of these letters, the prosecution established by proof other letters as stan-dards for comparison, and also produced a railroad ticket which one Appleton, a conductor on the Vermont Central Railroad, testified he took from the respondent, Lavigne, just before his arrest, which had written upon it in pencil, the words, as follows : "Jerome La Vigne, 93 River Street, Troy, N. Y.," and also produced a ballad, ( " Pat Maloy,") which the officer, who arrested La Vigne, testified he took from him at the time of his arrest, and which had the words written upon it in pencil as follows : " John Ward, Canal Boat, S. F. Davis, Albany to Oswego." All the papers were then submitted to two witnesses, who were introduced by the prosecution, as experts in identifying handwritings, and after examination and proof as to their experience in this respect, they testified that in their opinion they were all written by the same hand. All said papers were then against the respondent's objection, submitted to the jury, (except the ballad and the railroad ticket with the writings upon them,) and the letters dated September 22d and 30th, 1864, signed " Jerome La Vigne," were read to the jury.

The prosecution then offered the writing upon said ballad and rail-road ticket, and against the objection of the respondent, the court allowed the same to be read to the jury, and the same, with the other papers above mentioned and referred to, were, against the respond-ent's objection, submitted to the jury.

The facts in respect to said letters and papers are more particularly and fully stated in the opinion of the court.

State *v.* Ward *alias* La Vigne.

One of said experts, Sayles Nichols, testified that for some years he had been book-keeper and cashier for the firm of Jed P. Clark & Co., in Burlington ; that he had had occasion to see a great many letters, and had examined handwriting as to its genuineness somewhat ; that all the money of that establishment passed through his hands, and that the amount was quite large. All the papers before referred to were then exhibited to the witness and he testified that he had examined the same. In answer to a question proposed by the respondent's counsel, the witness made answer that he had never seen the respondent La Vigne write, nor had ever had any correspondence with him.

The respondent's counsel thereupon objected to his further testimony upon the subject of the handwriting of the letters signed, "Jerome La Vigne," and dated September 22d and 30th, 1865, respectively, or the identity of the handwriting in the several papers that had been shown to him ; but the court overruled the objection and allowed the witness to testify, and he did testify that there was very strong resemblance between the writings in all these papers ; that it was his opinion that they were all written by the same hand.

To the several rulings against the claims and objections of the respondent above stated, the respondent excepted. The charge of the court was such as the case called for, and no objections thereto were taken by the respondent.

*H. Ballard,* for the respondent.

I. The court erred in excusing Prouty as a juror. He was not legally exempt, G. S. chap. 130, p. 777, therefore the court had no power to excuse him against the objection of the respondent.

II. The excusing of Prior from serving as a juror was error. It appears from the various answers that he made to the questions that were put to him, that he was competent. The proper construction to put upon them all taken together is, that he had conscientious scruples *not against rendering a verdict of guilty,* in a case where the law inflicted the punishment of death, but against the law itself. If a person declares that he can render a verdict according to the evidence, he is a competent juror, no matter what his opinion may be,

State *v.* Ward *alias* La Vigne.

or what conscientious scruples he may have in regard to the propriety or the right of the law inflicting the punishment of death. *Com.* v. *Webster*, 5 Cushing, 295, 298 ; 2 Graham & Waterman on New Trials, 256–7–8–9.

III.   The two letters signed "Jerome LaVigne" were improperly admitted as evidence.  The handwriting of the other papers with which the letters were compared, was not proved by any clear, direct and positive testimony.  These witnesses, Nichols and Stone, should not have been permitted to testify as experts upon this question.  It is settled by the authority of a multitude of cases, that such evidence is not admissible.   1 Greenl. Ev. pp. 725, 726, and note and cases there cited.   See also, Phillip's Ev., Cowen & Hill's notes, vol. 2, pp. 1326, 1327, and cases there cited.

IV.   The letter marked "S," the two marked "William D. Munson," the two envelopes marked respectively, "D," and "O," the ballad and the railroad ticket, with the writing in pencil upon each, were all of them improperly admitted as evidence.  The handwriting of papers submitted for the purpose, these were *i. e.*, that the jury might compare the handwriting of these with the handwriting of the contested letters, must either be admitted or else *proved* beyond question by *clear, direct and positive testimony.*   *Adams* v. *Field*, 21 Vt. 256.

None of these papers that were submitted for this purpose were admitted to be in the handwriting of the respondent, and none of them were *proved* to be in his handwriting.

V.   The witnesses, Nichols and Stone, were improperly allowed to testify as experts.   It was conceded that neither of them had any knowledge of the respondent's handwriting.   The knowledge of handwriting and the ability to judge as to its genuineness which a person would acquire as a cashier and book-keeper, or in attending to the duties of a post office are only an incident to, and not the subject matter of, the business itself.   See 1 Greenl. Ev., p. 572, note.

*L. B. Englesby*, State's Attorney, for the State.

The letters and papers referred to in the bill of exceptions were properly submitted to the jury for a comparison of handwriting.

State *v.* Ward *alias* La Vigne.

*Gifford* v. *Ford*, 5 Vt. 532; *Adams* v. *Field*, 21 Vt. 256 and cases cited. The case at bar comes clearly within the rule adopted in these cases, the letters and papers marked respectively, "S," "D," "William D. Munson," etc., having been proved by persons, who saw them written, to have been written by the respondent.

The testimony of Nichols and Stone was properly admitted. A standard having been established they testified as to the authenticity of the papers alleged to have been written by and containing evidence against the respondent, from the skill they have acquired in such matters from long use and practice. If the court will allow the jury to pass upon the question of a similarity of handwriting, by how much the more should they allow that judgment to be aided by that of men skilled in this very business. The admissibility of authenticated documents being established, it would seem to follow that any evidence tending to elucidate the same question, would be admissible, its weight to be determined by the jury. This is but another form of the same rule. The English cases which decide against the admissibility of this class of testimony do so upon the ground that it is but a comparison of handwriting, and *that* under these decisions is excluded. 2 Wharton's Crim. Law, § 1465; 4 Esp. 117. The rule is the same in criminal as in civil cases.

It is a question of fact whether or not a person is an expert, and not revisable on exceptions. Greenl. Ev. vol. 1, § 597, *et seq.*

The opinion of the court was delivered by

WILSON, J. The county court were clearly correct in excusing Prouty from serving as a juror. He claimed to be excused upon the ground that he was a member of a regularly organized fire engine company in the city of Burlington, in which city the court was in session for the trial of the respondent. It was determined upon the evidence, and the fact was not contradicted, that Prouty was a member of the company, and on that ground the court in their discretion excused him. The court must have found that his duties, as a member of the company, were such as rendered it improper for him to serve as a juror, especially in a criminal cause, in the trial of which the jury might be detained several days, and from which it

State *v.* Ward *alias* La Vigne.

would have been difficult for one of the jurors to have obtained a release, or to have been permitted to separate from his fellow jurors, until a verdict had been rendered, or until the jury, for other cause, had been discharged from further consideration of the case. The decision of the court, as to the sufficiency of the excuse, involved no question of law; it was in view of the facts he was excused, the sufficiency of which was for the court to determine, and to their decision no exception could be taken.

II.   It is urged by the respondent that the county court erred in excusing Prior from serving as a juror.  It appears that Prior was called as a juror, who, upon being interrogated in respect to his views of capital punishment, declared he had conscientious scruples against rendering a verdict of guilty in a case where the punishment was death.   Prior was further questioned upon the subject, and he stated he believed the law inflicting the punishment of death was wrong, but that if compelled to sit as a juror in such case, if he was fully satisfied that the respondent was guilty, he would render a verdict of guilty, but felt that he was not, for the reason stated, a proper person to sit as a juryman in the trial of a man charged with a crime the punishment for which was death ; and that it would require more evidence to induce him to render a verdict of guilty in a case where the punishment was death, than where it was imprisonment. Upon this evidence the court, against the objection of the respondent, excused Prior as a juror.   The tenth article of the constitution of this state declares that in all prosecutions for criminal offences, the person charged hath a right to a speedy public trial, by *an impartial jury.*   This provision of the constitution is enforced by legislative enactments, and it has been strictly observed in prosecutions for high crimes, the punishment of which affects life and liberty, and exposes the offender to infamous corporal suffering.   The statute regulating the mode of selecting jurors, and the provision that every person who shall be arraigned and put on trial for an offence punishable with death, or by imprisonment in the state prison for a term of years, shall be permitted peremptorily to challenge six of the jurors, and such further number as he can show cause for challenging, are intended to secure to the person charged with such crime, this con-

stitutional right, viz : an impartial trial by jury. The words " *an impartial trial,*" import that the trial shall be impartial in respect to the state as well as the accused. It would not, we think, be gravely insisted that a trial by jurors, who were controlled or influenced by prejudice, arising from preconceived opinion, or a trial by jurors whose conscientious scruples would not allow them to be governed by the law applicable to the case, was an impartial trial by jury, within the meaning of the constitution and laws of the state. No peremptory challenge to jurors is allowed in behalf of the state, but the impartiality of the trial, in a criminal prosecution, is to a considerable extent, secured by the law giving the right in behalf of the state of challenge for cause. This right is essential, and its exercise may, in some cases, be indispensable to the certain and impartial administration of justice. The question, whether Prior was a competent and fit person to sit as a juror in the trial of the case, was one of fact, to be determined by the court upon the evidence. The declaration of Prior, that he had conscientious scruples against rendering a verdict of guilty where the punishment was death, appears to have been sincerely made, and it was sufficient to excuse him from serving as a juror in the case. His explanation, that if compelled to sit as a juror, if he was fully satisfied that the respondent was guilty he would render a verdict of guilty, accompanied as it was with the statement by him that he felt that he was, on account of his conscientious scruples, not a proper person to sit as a juryman in the trial of the case, and that he should require more evidence in order to render a verdict of guilty than in a case where the punishment was by imprisonment, tended to show that he still insisted his scruples might have a controlling influence over him as a juror. It may be true that the statement of Prior, that he should require more evidence in a case where the punishment was death, than where it was by imprisonment, did not, of itself, show that, in the trial of the case, he would disregard all rules of evidence, but he indicated no rule he would adopt in respect to the measure of proof he would require to justify a conviction ; and from his statement it was uncertain whether he would have been governed by the proofs in the case, or by his conscientious scruples as to the right to punish with death.

It was upon Prior's whole statement taken together, that the question of his fitness was to be decided. His statements were conflicting; some of them afforded direct and positive proof of his unfitness, and the other statements raised a doubt as to whether the court should retain or excuse him. Under such circumstances the question whether he should be retained or excused because necessarily a matter of fact for the decision of the county court, which required the exercise of the judgment and discretion of that court, in view of all the statements made by the juror, and evidence bearing upon the question; and we think the county court might legitimately find from the evidence that Prior was not a fit person to serve as juror in the trial of the case. The exception presents no question of law for revision by this court.

III. The only remaining question is whether the county court erred in admitting the testimony to which the respondent objected. It appears that among the evidence offered by the prosecution, were two letters dated respectively September 22d and September 30th, 1865, and signed "Jerome La Vigne." No question was made but these letters contained evidence against the respondent if they were written by him.

The case shows that, in order to prove the handwriting of these letters, the prosecution called one Morris Flanagan and exhibited to him a letter signed " Morris Flanagan," and marked "S," and having also marked on the envelope the letter " D." The witness testified that he made these marks on the papers at the request of Wm. D. Munson, sheriff, and in his presence; that the papers when he marked them were just as they were at the time of the trial; that he did not know who wrote the letter; that he could not read writing; that La Vigne had written two letters for him while he and La Vigne were in jail together; that one of the letters was to the sister of the witness; that La Vigne directed it and put a stamp on it and the witness gave it to Mr. Munson to put it into the post office, and afterwards marked it at Munson's request, and that all this occurred about two weeks before the trial. Sheriff Munson testified that the witness, Morris Flanagan, about two weeks before the trial, handed to him this letter in jail, in a sealed envelope; that

about fifteen minutes after, in an adjoining room, he got Flanagan to put the mark (letter " D.") on the envelope, and after opening the envelope he put the letter "S," upon the letter itself.    A letter marked "William D. Munson," and signed D. Harrington and directed to Mr. Wilber, having been exhibited to the witness by the prosecution, he testified that the respondent, La Vigne told him that he wrote that letter and its superscription.    Another letter signed " Morris Flanagan " and addressed to " Luman Drew," and marked " Wm. D. Munson," having been exhibited to the same witness, he testified that he saw La Vigne write it.    Mr. Ballard testified that he had seen the handwriting of La Vigne upon the envelopes of letters ; and that the superscription upon an envelope marked "O," exhibited to him, was, in his opinion, the handwriting of the respondent La Vigne.    It appears that Mr. Ballard testified from his acquaintance with and knowledge of the handwriting of the prisoner.    The two letters marked respectively September 22d and September 30th, 1865, were offered by the prosecution as evidence upon the main issue.    The genuineness of these letters was in dispute.    The letter referred to in the testimony of Morris Flanagan and Munson ; the letter directed to Mr. Wilber ; the letter directed to Luman Drew, referred to in the testimony of Munson ; and the writing upon the envelope marked "O," referred to in the testimony of Mr. Ballard, were offered by the prosecution as standards or tests for a comparison of handwriting.    It is urged by the respondent that the writings, introduced by the prosecution as standards, were not proved to have been written by the respondent.    In *Adams* v. *Field*, 21 Vt. 256, BENNETT, J., says : " The genuineness of the document, however, which goes to the jury for the purpose of comparing the contested document with it, must either be admitted, or else established by clear, direct and positive testimony.    Unless this is in the first instance done, the testimony should, for obvious reasons, be excluded."    We understand the rule laid down in that case, as to comparison of hands, is well settled law in this state.    The principal question in this branch of the case is whether the proof, in respect to the genuineness of the writings offered as standards, was sufficient to allow them to go to the jury for that purpose.    It appears that the tes-

State *v.* Ward *alias* La Vigne.

timony as to their genuineness was clear, direct and positive ; it was confined to the matter in issue, and it tended to prove that the writing upon the papers offered as standards was the handwriting of the respondent. The respondent introduced no testimony in respect to the authenticity or genuineness of these writings, and it does not appear that the testimony introduced by the prosecution, was conflicting or contradictory in respect to either of the alleged standards. The sufficiency of the proof given of the genuineness of the papers offered as standards, was a preliminary point addressed to and in the first instance to be determined by the court, before permitting the papers to go to the jury. This preliminary question when raised in a criminal prosecution, especially for crime, the punishment of which affects life, would naturally invite and receive great care in its determination by the court. The court having adjudged the papers genuine, and having permitted them to go to the jury, it then became the duty of the jury, before making comparison of a disputed writing with them, to examine the testimony respecting their genuineness, and decide whether their genuineness was established beyond a reasonable doubt ; and in such cases the court should instruct the jury that if they did not find, by such measure of proof, that the papers offered as standards are genuine, they should not be used as evidence against the prisoner. In criminal prosecutions, where the guilt of the accused is sought to be estabished by proof afforded by comparison of handwriting, although the court have decided that the writing offered as a standard is genuine, still it is the right and duty of the jury to judge for themselves in respect to the sufficiency of the proof of the genuineness of the writing. They should weigh the testimony by the same rule, and require the same measure of proof they would require in respect to any other essential point in the case. In England it was long held that a comparison of handwriting was not admissible ; but that rule was modified by more modern decision, under which their courts admitted in evidence comparison of hands, but confined it to documents which were proved to be genuine, and which were in evidence on the trial of the cause for other purposes. The doctrine of those cases (except where the writing in dispute was an ancient document, ) was law in England for a long period of

time ; finally, a different, and, we think, more reasonable rule was introduced by parliament.

In 1854 an English statute known as " Common Law Procedure Act," was passed, which provides expressly that " comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses ; and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute." It has been found in many cases that the interests of truth require the introduction and use of such testimony, and when guarded by proper rules, it is as free from objection as any other human testimony which requires the exercise of the judgment and discretion of court and jury in determining whether it is sufficient to prove the alleged fact.

It is further insisted by the respondent that the writing upon the railroad ticket, and the writing upon the ballad were improperly admitted. It was shown that the railroad ticket, with the writing upon the back of it, was taken from the possession of the respondent just before his arrest. It was proved that the ballad, with the writing on the back of it, was taken from the pocket of the respondent at the time of his arrest. These papers, with testimony tending to show they were written by the respondent, were submitted to the jury, and they were admissible and important evidence upon the main issue in the case. It appears that Nichols and Stone were admitted to testify on the ground that they were persons of skill and experience on the subject to which their testimony related. They were allowed to examine and compare the contested papers with the genuine, and to give their opinion as such witnesses, from a comparison of handwritings, as to the identity or difference of proved specimens, with the signatures and writings in question. These witnesses before they were admitted to testify as to comparison of handwriting were interrogated, and testified very fully as to their experience in the examination and comparison of writings. It was for the court in the first instance to determine whether these witnesses possessed sufficient skill to entitle them to give an opinion as experts, before they were admitted to give evidence to the jury as to the identity of

State *v.* Ward *alias* La Vigne.

the standards with the contested papers. The court having decided the preliminary question, viz: that the witnesses were experts, it was admissible to allow them to compare the contested papers with the genuine, and give their opinion whether they were written by the same hand. The very object of such testimony is to elicit facts, reasons and conclusions which science and the experience of the witness enable him to develope. The law of evidence in criminal prosecutions requires the jury to determine from the testimony whether the witness offered as an expert has sufficient skill and experience to render his opinion of any importance; it is for the jury to determine what weight should be given to such evidence upon the main issue and the prisoner should have the benefit of any reasonable doubt in the minds of jurors, the same as in their determination in respect to the sufficiency of any other testimony in the case. No exception having been taken to the charge of the court, we infer that the judge who presided at the trial of the case must have instructed the jury in a manner entirely satisfactory to the respondent in respect to all points raised in the case. We are entirely agreed that the several rulings of the county court, to which exceptions were taken by the respondent, were correct,

The judgment is, that the respondent take nothing by his exceptions, and that he be sentenced upon the verdict.