## State of Vermont v. Kent Auburn Hanson

[356 A.2d 517]

No. 241-74

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed April 6, 1976

228

*John A. Rocray*, Windham County State's Attorney, Brattleboro, for the State.

*Weber, Fisher, Perra & Gibson*, Brattleboro, for Defendant.

**Smith, J.** This case comes to us as an appeal from a judgment of guilty granted August 30, 1974, in the District Court of Vermont, Unit No. 6, Windham Circuit, after a trial by jury for violation of 13 V.S.A. § 2501.

On April 1, 1974, appellant Kent Hanson, then an unsupervised patient at Vermont State Hospital at Waterbury, left the hospital in an automobile with a vague purpose of traveling to Brattleboro. While driving on Interstate 89 in the Barre-Montpelier area, appellant picked up two male teenaged hitchhikers. The vehicle driven by Hanson eventually broke down and was abandoned by its occupants, who received a ride into Randolph, Vermont, from a service wrecker. In Randolph, Hanson and the two young men engaged in various frivolous activities until late in the afternoon when it was decided that

all three would go to Brattleboro together. At that point, Hanson got into a 1973 Toyota Corolla owned by Robert Smith of Randolph, the key to which had been left in the ignition, and proceeded to drive himself and his two companions to Brattleboro. The trio arrived at their destination sometime in the evening. There they visited various bars in which the appellant consumed a substantial amount of alcohol. The three subsequently drove the Toyota to the Signal Hill area of Brattleboro. At that site, the two hitchhikers set out on their own, leaving the appellant asleep in the car. Shortly thereafter the two were apprehended by Brattleboro police and taken into custody. After questioning the young men the police proceeded to the Signal Hill locale where they discovered Hanson asleep in the Toyota. Hanson was immediately arrested for possession of stolen property and incarcerated.

On April 2, the State's Attorney for Windham County filed an information charging Hanson with violation of 13 V.S.A. § 2561. Subsequently this was amended to read 13 V.S.A. § 2501.

At trial, which commenced August 28, 1974, Hanson pleaded not guilty and not guilty by reason of insanity. The latter plea was predicated on the fact that Hanson, in 1963, suffered a ruptured aneurysm of an artery supplying blood to the brain which resulted in substantial organic damage to his brain. Appellant contended at trial, as he does here, that this "mental disease" relieved him from criminal responsibility for his conduct on April 1, 1974, under the language of 13 V.S.A. § 4801. To rebut this defense, the State introduced the testimony of Dr. Bardwell Flower, a qualified expert in forensic psychiatry, who had been appointed to examine Hanson. In his testimony, and under cross-examination, Dr. Flower stated that it was his opinion that "Kent Hanson was mentally ill at the time of the offense with which he is presently charged but not to the extent that he was legally insane."

At the termination of the evidence, the State requested a charge, delivered by the court, that

> mental disease or defect do not include an abnormality manifested by repeated criminal or other anti-social conduct. Thus if you determine that the only evidence of Mr. Hanson's mental disease is a pattern of anti-social be-

havior, you cannot return a verdict of not guilty by reason of insanity.

Appellant made timely objection to this charge.

The jury, on August 30, 1974, determined that Hanson was guilty as charged. Appellant, on September 3, filed a motion for a new trial alleging that: (1) the court erred in its instructions to the jury in that it should not have included the above quoted request of the State relating to mental disease and "psychopathic" behavior; and (2) that because of his inability to understand or accept the statutory definition of insanity, coupled with his incomplete knowledge of the facts, the testimony of Dr. Flower should have been excluded. This motion was denied and appellant was sentenced to 0–5 years imprisonment.

Hanson now appeals the judgment entered below on the following grounds: (1) that the verdict was contrary to the evidence, and, therefore, the trial court erred in denying appellant's motion for a new trial; and (2) that the court below committed error in its charge to the jury.

I.

The standard to be followed in passing upon appellant's contention that the trial court erred in denying his motion for a new trial is whether there is evidence in the case such that the jury could find beyond a reasonable doubt that the defendant-appellant was sane at the time of the commission of the offense. *State* v. *Bishop*, 128 Vt. 221, 227, 228, 260 A.2d 393 (1969); *State* v. *Blair*, 118 Vt. 81, 100, 101, 99 A.2d 677 (1953); *State* v. *Wilson*, 113 Vt. 524, 529, 37 A.2d 400 (1944).

The motion for a new trial, under V.R.Cr.P. 33, is directed to the discretion of the trial court. Wright, Federal Practice and Procedure: Criminal § 551 (1969). Therefore, this Court will defer to the view of the court below and will affirm unless there has been error as a matter of law or a clear abuse of discretion. *Id.* at § 559.

Review of the transcript reveals ample evidentiary support, primarily the testimony of Dr. Flower, for the jury's verdict. Appellant alleges, however, that the testimony was insufficient

as a matter of law since Flower had not been fully informed as to the appellant's behavior on the relevant dates and had expressed doubts concerning the validity and meaning of the Vermont statute. The record demonstrates, however, that when apprised of this behavior, the witness stated that such information would not alter his final opinion. In addition, Dr. Flower testified fully to the extent of his examination of the appellant and investigation into his background. This question raised by appellant was dealt with by the Court in *State* v. *Bishop, supra,* where it ruled:

> Though it is for the court to judge, in the first instance, whether witnesses introduced as experts possess sufficient skill to entitle them to give an opinion, it is for the jury to determine from the testimony whether such experts have sufficient skill to render their opinion of any importance.

*State* v. *Bishop, supra,* 128 Vt. at 228. Appellant's contention directed at the legal sufficiency of Flower's testimony is more properly concerned with the weight to be accorded it.

■ Clearly, then, there was produced at trial sufficient evidence indicative of appellant's sanity at the time of the commission of the offense. It was for the jury to say, as judges of the weight thereof, whether this evidence removed all reasonable doubt as to appellant's mental state. *State* v. *Blair, supra,* 118 Vt. at 101; *State* v. *Wilson, supra,* 113 Vt. at 529; *State* v. *Ward,* 39 Vt. 225, 229 (1867). Accordingly, our rules do not require reversal on the ground that the motion was erroneously denied.

## II.

Appellant's second point of error is directed at the following portion of the trial court's charge to the jury delivered at the request of the State:

> You are further instructed that the terms mental disease or defect do not include an abnormality manifested by repeated criminal or other anti-social conduct. Thus if you determine that the only evidence of Mr. Hanson's mental disease is a pattern of anti-social behavior, you

cannot return a verdict of not guilty by reason of insanity.

Appellant's objections are aimed at the alleged lack of factual basis for the charge, and the fact that it omits the last sentence of 13 V.S.A. § 4801, which reads, "The terms 'mental disease or defect' shall include congenital and traumatic mental conditions as well as disease." As a result, appellant contends that the charge as given could only confuse and mislead the jury in its deliberations.

■ The question to be resolved by this Court is whether the instruction of the court below adequately covered the point charged, and amply protected the rights of the defendant. *State* v. *Stacy,* 104 Vt. 379, 410, 160 A.2d 257 (1932). In other words, taking the charge in its entirety, did it properly charge the relevant tests of insanity established in 13 V.S.A. § 4801? 23A C.J.S. *Criminal Law* § 1200; *State* v. *Adams,* 131 Vt. 413, 421, 306 A.2d 92 (1973).

■ Of necessity instructions should lack tendencies to mislead, and any instruction is erroneous where it is obviously apt to confuse or mislead the jury. 23A C.J.S. *Criminal Law* § 1306. In light of the proof adduced at trial and the clear terms of the statute, it is our view that the instruction given below was in fact erroneous as one likely to confuse the jury.

This conclusion is particularly compelling when one considers the popular and legal concern that the insanity defense should not be employed so as to open the way for acquittal of persons accused of crime solely on the basis of a history of anti-social conduct. This concern assumes that the "psychopath" is a person who is a habitual criminal but whose mind is functioning normally. *United States* v. *Currens,* 290 F.2d 751, 761 (3d Cir. 1961). The Vermont statute incorporates this concern, as evidenced by the following language:

> The terms "mental disease or defect" do not include an abnormality manifested *only* by repeated criminal or otherwise anti-social conduct. The terms "mental disease or defect" shall include congenital and traumatic mental conditions as well as disease. (emphasis added.)

Given the agreed fact that appellant suffers from a traumatically induced mental disease, the trial court's failure to include the word "only" and the entire last sentence of 13 V.S.A. § 4801 in the charge must be ruled erroneous. It is sufficient to point out that the evidence of Hanson's mental state consists of more than his record of criminal behavior. On the basis of such evidence, and proper guidance from the court, the jury reasonably could have found Hanson to have been legally insane. *United States* v. *Currens, supra,* 290 F.2d at 763. In instructing the jury it is the trial court's duty to articulate the requisite nexus between "mental disease" and guilt in a fashion that will aid the jury in its weighty task. In other words, the court should supply the jury with a standard with which it can link the accused's mental condition to his entire personality and conduct so that it might render a just decision. *Id.* We hold that the charge delivered in this case failed to perform this function, and as a result could have had a strong tendency to mislead and confuse the jury.

*The judgment is reversed and remanded.*