### State of Vermont v. John M. Duff

[554 A.2d 214]

No. 86-243

Present: **Allen, C.J., Peck, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed August 26, 1988

*Jeffrey L. Amestoy, Attorney General, Susan R. Harritt, Assistant Attorney General,* and *Robert Katims, Law Clerk (On the Brief)*, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General,* and *William A. Nelson and Henry Hinton, Appellate Defenders*, Montpelier, for Defendant-Appellant.

**Mahady, J.** Following a trial by jury, defendant was convicted of the first degree murder of his wife and of the attempted first degree murder of his stepdaughter. At trial, defendant relied principally upon the defense of diminished capacity. In this appeal, he challenges the trial court's jury instructions. We hold that the court's charge constituted plain error and reverse.

Defendant raises the following issues: (1) whether the trial court incorrectly charged the offenses of voluntary manslaughter and attempted voluntary manslaughter, both of which are lesser-included offenses to the charges filed by the State; (2) whether the trial court erred when it failed to charge the presumption of innocence as it applies to the determination of the degree of guilt; (3) whether the trial court erroneously instructed the jury to consider the most serious charge first and to proceed to the lesser-included offenses if they had a reasonable doubt as to the most

serious charge; and (4) whether the trial court's charge unconstitutionally shifted the burden of proof on the issue of diminished capacity to defendant.

## I.

At trial, defendant in effect admitted committing the homicide as well as the attempted homicide but claimed that he was guilty of only voluntary manslaughter and attempted voluntary manslaughter. His theory of the case was that his diminished capacity negated malice. He presented expert testimony to this effect.

"The element that distinguishes murder from manslaughter is malice." *State* v. *Long*, 95 Vt. 485, 496, 115 A. 734, 739 (1922). Therefore, the presence or absence of malice was crucial in this case.

In Vermont, there are at least two ways in which malice may be negated in the context of a homicide prosecution. First, a jury may find malice to be absent by reason of sudden passion or great provocation. See, e.g., *State* v. *Averill*, 85 Vt. 115, 128-29, 81 A. 461, 465-66 (1911). Second, a jury may find malice to be absent by reason of a defendant's diminished capacity. See, e.g., *State* v. *Smith*, 136 Vt. 520, 527-28, 396 A.2d 126, 130 (1978); *State* v. *Pease*, 129 Vt. 70, 76-77, 271 A.2d 835, 839-40 (1970); see also *State* v. *Messier*, 145 Vt. 622, 628-29, 497 A.2d 740, 743-44 (1985). The latter is predicated upon a finding by the jury that the defendant suffered from mental disabilities, not necessarily amounting to insanity, which operated to preclude a capability of forming a state of mind (in this case, malice) which is an essential element of the greater offense charged. *Smith*, 136 Vt. at 527-28, 396 A.2d at 130. The clear thrust of the defense in the instant case was diminished capacity, not that malice was negated by a situation of great provocation or sudden passion.

Defendant, relying upon this theory, requested the trial court to charge the jury on the subject of manslaughter as follows:

> A person who intentionally kills another may be incapable of harboring malice aforethought because of a mental disease or defect yet that person may not necessarily be legally insane. In such a case the person is guilty of manslaughter and no greater offense. Malice aforethought is an essential element of both first and second degree murder and, therefore, the burden of proof rest upon the State to show beyond

a reasonable doubt that the Defendant . . . had such malice before you may find him guilty of either first or second degree murder.

In other words, in the absence of malice, a homicide cannot be an offense higher than manslaughter. Therefore, if you find . . . that the State has failed to prove beyond a reasonable doubt that the Defendant acted with malice, then the Defendant is guilty of manslaughter and nothing more.

This request stated the law correctly and was consistent with defendant's theory of the case.

The trial court did charge diminished capacity in the context of its definition of first degree murder. However, the court subsequently instructed the jury as follows:

Voluntary manslaughter is defined as the intentional and unlawful killing of a human being with a real design and purpose to kill, but as a result of sudden passion or great provocation, and done before adequate time for cool reflection. Thus, voluntary manslaughter is an intentional, unlawful killing without malice.

In order to prove voluntary manslaughter, the State must prove each of the following elements beyond a reasonable doubt:

No. 1: That John Duff killed Charmion Duff;

No. 2: The killing was intentional;

No. 3: The killing was unlawful; and

No. 4: That the killing resulted from sudden passion or great provocation.

In effect, the court told the jury that defendant could be convicted of voluntary manslaughter only if the State established beyond a reasonable doubt that defendant's acts resulted from sudden passion or great provocation. This was essentially the same charge the court gave on the offense of attempted manslaughter. ■ The deficiencies in this charge are manifest. We must begin with the obvious requirement that "it is the duty of the court to conduct a trial with the utmost impartiality and fairness. A charge should be full, fair, and correct on all issues, theories, and claims within the pleadings, so far as the evidence requires." *State* v. *Ciocca*, 125 Vt. 64, 74-75, 209 A.2d. 507, 515 (1965); see

also *State* v. *McLaren*, 135 Vt. 291, 296, 376 A.2d 34, 38 (1977); *State* v. *Rebideau*, 132 Vt. 445, 454, 321 A.2d 58, 64 (1974).

The trial court's charge was not correct as to a critical aspect of the case, the definition of voluntary manslaughter, the offense for which defendant agreed that a verdict of guilty would be appropriate. The existence of sudden passion or great provocation is simply not an essential element of voluntary manslaughter.

Moreover, the charge was not complete. While diminished capacity was discussed in other sections of the charge, it was not mentioned at this critical juncture in spite of the fact this was defendant's basic theory of the case for which he presented evidence. Cf. *McLaren*, 135 Vt. at 296, 376 A.2d at 38.

Nor was the charge fair. It clearly created the impression in the mind of the jury that it was the burden of the State to establish sudden passion or great provocation. Of course, the State did not have the slightest desire to do so when it was prosecuting defendant for murder and attempted murder in the first degree.

The charge also created the clear impression that those matters relating to mitigating circumstances had to be established beyond a reasonable doubt. If anything, the State was interested in disproving factors tending to make defendant less culpable. See, e.g., *State* v. *Muscatello*, 55 Ohio St. 2d 201, 203-04, 378 N.E.2d 738, 740 (1978). The jury could well have been led to believe that defendant bore the burden of proving mitigating circumstances beyond a reasonable doubt. This was improper. Evidence of reduced mental capacity is not a defense on which a defendant bears a burden of proof. *Messier*, 145 Vt. at 629, 497 A.2d at 744. The mental state of a defendant must be proved by the State. *Id.* Defendant introduced evidence of reduced mental capacity to interject doubt as to one of the elements of murder, that is the mental capability to act with malice, which the State is required to prove beyond a reasonable doubt. *Id.*

"A defendant is entitled to have the court present a defense based on the evidence 'to the jury squarely, that they might confront it, consider it, and resolve its truth or falsity by their verdict.'" *State* v. *Drown*, 148 Vt. 311, 312, 532 A.2d 575, 576 (1987) (quoting *State* v. *Brisson*, 119 Vt. 48, 53, 117 A.2d 255, 257-58 (1955)). This defendant was effectively denied that entitlement. Furthermore, "'[o]f necessity instructions should lack tendencies to mislead, and any instruction is erroneous where it is obviously apt to confuse or mislead the jury.'" *State* v. *Gokry*, 136 Vt. 33,

36, 383 A.2d 601, 602 (1978) (quoting *State* v. *Hanson*, 134 Vt. 227, 232, 356 A.2d 517, 520 (1976)).

The charge as given for both offenses of voluntary manslaughter and attempted voluntary manslaughter was not correct, fair nor full as to a central issue raised by the evidence. It also was obviously apt to confuse and mislead the jury.

## II.

■ Defendant requested the trial court to include the following among its instructions to the jury for both offenses of the murder and attempted murder:

> If you reach the point of determining what degree of homicide is involved in this case, the presumption of innocence is to be considered in that determination. We have already defined what that presumption is. Under it the defendant is first presumed innocent of any crime, but if you find by the required measure of proof beyond a reasonable doubt that he committed an unlawful homicide . . . it is presumed to be a lesser degree, that is, manslaughter.
>
> If, however, the evidence weighed along with the presumption of innocence convinces you beyond a reasonable doubt that the homicide had the additional element of malice, it is murder, and if the evidence weighed along with the presumption of innocence convinces you beyond a reasonable doubt that the act was also willful, deliberate, and premeditated, it is murder in the first degree rather than the second.

At the charge conference, defendant repeated this request. The trial judge at first indicated that she would include the requested charge in her instructions. Subsequently, she advised counsel that she would not do so, having concluded "there is no presumption as between one offense and a lesser-included offense."

However, it has long been the law of this jurisdiction that

> it is the duty of the court, upon common principles of humanity and justice, first, to pronounce the criminal innocent until he is proved guilty; and, secondly, after he is shown to have committed a homicide, to look for every excuse which may reduce the guilt to the lowest point consistent with the facts proved.

*State* v. *McDonnell*, 32 Vt. 491, 538 (1860); see also *State* v. *Meyer*, 58 Vt. 457, 466-67, 3 A. 195, 200-01 (1886), *overruled on other grounds, State* v. *Burpee*, 65 Vt. 1, 25 A. 964 (1892). It follows that:

> If the defendant could be convicted of a lesser offense, the jury should be instructed that, in case of a reasonable doubt between the degrees or offenses, it may convict of the lesser only; a general instruction that the defendant's guilt must be established beyond a reasonable doubt is not sufficient.

4 Wharton's Criminal Procedure § 545, at 32 (12th ed. 1976). The courts in other jurisdictions which have considered the issue have reached this same conclusion. See, e.g., *People* v. *Dewberry*, 51 Cal. 2d 548, 555-58, 334 P.2d 852, 856-58 (1959); *State* v. *Asbury*, 172 Iowa 606, 615, 154 N.W. 915, 918-19 (1915); *State* v. *Trujillo*, 225 Kan. 320, 323, 590 P.2d 1027, 1031 (1979); *State* v. *Robinson*, 276 S.C. 435, 436, 279 S.E.2d 372, 373 (1981); *Bryant* v. *State*, 54 Tex. Crim. 65, 68, 111 S.W. 1009, 1010 (1908); *McCall* v. *State*, 14 Tex. App. 353, 363 (1883). The State has not called a contrary holding to our attention, nor are we able to find one.

The rule is sound, and we adopt it. The requested charge should have been provided to the jury.

### III.

The trial court charged the jury to consider the various offenses in descending order from the most severe to the least severe, that is, first degree murder, second degree murder, voluntary manslaughter, involuntary manslaughter. (A similar instruction was given as to the attempted first degree murder charge and its lesser-included offenses.) This has long been the accepted and approved practice in this jurisdiction. *Long*, 95 Vt. at 496, 115 A. at 739.

In each instance, the court, after charging on the elements of the greater offense, instructed the jury that if, after consideration of the greater offense, they had a reasonable doubt as to any of the elements of the greater offense, they should then consider the next lesser-offense. Defendant argues that these "transitional" charges were in error.

Such an instruction in effect mandates the jury to reach a verdict with respect to the offense charged before considering a

lesser-included offense. *State* v. *Martin*, 64 Or. App. 469, 471, 668
P.2d 479, 480 (1983).

> spn] Under the judge's instruction, even if the jurors were
> 11 to 1 for acquittal and a significant number of jurors de-
> sired to discuss the possibility of convicting the defendant of
> a lesser offense, [the jury could reasonably believe that] con-
> sideration of a lesser offense could not begin unless the one
> juror holding out for conviction were dissuaded from that
> view.

*People* v. *Hurst*, 395 Mich. 1, 10, 238 N.W.2d 6, 10 (1976).

Defendant's argument presents a serious due process issue. See
*Spierings* v. *Alaska*, 479 U.S. 1021 (1986) (White, J., dissenting
from the denial of certiorari). There is a distinct danger that such
a charge will not realistically provide the option of lesser-included
offenses which "ensures that the jury will accord the defendant
the full benefit of the reasonable-doubt standard." *Beck* v. *Ala-
bama*, 447 U.S. 625, 634 (1980). Courts in other jurisdictions have
therefore found such transitional charges to be impermissible.
See, e.g., *People* v. *Mays*, 407 Mich. 619, 623, 288 N.W.2d 207,
208 (1980); *State* v. *Muscatello*, 57 Ohio App. 2d 231, 251-52, 387
N.E.2d 627, 641-42 (1977), *aff'd*, 55 Ohio St. 2d 201, 378 N.E.2d
738 (1978); *Martin*, 64 Or. App. at 471, 668 P.2d at 480. But see
*Dresnek* v. *State*, 718 P.2d 156, 157 (Alaska 1986).

The United States Court of Appeals for the Second Circuit has
recognized the obvious fact that the impact of a transitional
charge will depend upon the particular case. A defendant who
seeks, as in the instant case, to obtain a conviction on a lesser-
included offense will benefit from a less rigorous transitional
charge. A defendant who seeks to avoid conviction altogether,
however, will benefit from the more rigorous charge because "a
jury unable either to convict or acquit on the greater charge will
not be able to reach a lesser charge on which it might have been
able to agree." *United States* v. *Tsanas*, 572 F.2d 340, 346 (2d
Cir.), *cert. denied*, 435 U.S. 995 (1978).

█ Therefore, the appropriate procedure is for the trial court
to provide a transitional charge which will permit the jury to
move on to the lesser offense if after all reasonable efforts it is
unable to reach a verdict on the greater; however, if the defend-
ant objects beforehand to such a charge, the more rigorous in-
struction shall be given. *Id.* This rule, formulated in *Tsanas*, has

been followed elsewhere. See, e.g., *United States v. Jackson,* 726 F.2d 1466, 1469-70 (9th Cir. 1984); *Catches v. United States,* 582 F.2d 453, 458-59 (8th Cir. 1978). We now adopt it as our rule.

## IV.

Finally, defendant claims that the part of the trial court's charge which did address the issue of diminished capacity unconstitutionally shifted the burden of proof to defendant.

To support this claim, defendant points to a portion of the court's charge in which the court noted that "the defendant has raised the defense of diminished capacity." He also notes that the court advised the jury that "if [they] find from all the evidence that [defendant] had a substantially reduced mental capacity . . . [they] must then decide what effect, if any, this diminished capacity had on [defendant's] ability to act with malice . . . . "

However, a single instruction cannot be viewed in isolation. *State v. Dusablon,* 142 Vt. 95, 98, 453 A.2d 79, 81 (1982). The charge as given, when considered as a whole, was not misleading in this regard. *State v. Poirier,* 142 Vt. 595, 600, 458 A.2d 1109, 1112 (1983). Defendant's claim is without merit.

## V.

At trial, defendant made specific requests to charge as to the lesser-included offense of voluntary manslaughter, the presumption of innocence as it applies to the determination of the degree of guilt and the "transitional" charge. These matters were discussed at the charge conference. However, upon the conclusion of the court's charge, defendant failed to object to the charge as required by V.R.Cr.P. 30: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict . . . ." In criminal cases, however, this rule is mitigated by the "plain error" doctrine. See, e.g., *State v. Bonilla,* 144 Vt. 411, 416, 477 A.2d 983, 986 (1984); *State v. Nicasio,* 136 Vt. 162, 164, 385 A.2d 1096, 1098 (1978), *overruled on other grounds, State v. Savo,* 139 Vt. 644, 647, 433 A.2d 292, 294 (1981).

That doctrine provides "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." V.R.Cr.P. 52(b). It first appeared in American jurisprudence in 1896, when the United States Supreme

Court declared that where a plain error has been committed in a matter vital to defendants, the Court is at liberty to correct it, though not properly raised. *Wiborg v. United States,* 163 U.S. 632, 658-59 (1896).

The plain error doctrine is a recognition of "the need to mitigate in criminal cases the harsh effects of a rigid application of the adversary method of trial, whereby the attorney's conduct binds his client." 8B Moore's Federal Practice § 52.02[2], at 52-54 (2d ed.). It reflects the concern of Judge Jerome Frank that "our kind of society deems it an essential principle that no court shall direct that any man be punished except after a fair trial." *United States* v. *Antonelli Fireworks Co.,* 155 F.2d 631, 663 (2d Cir. 1946) (Frank, J., dissenting).

This is one of those "rare and extraordinary case[s]," *State v. Mecier,* 145 Vt. 173, 178, 488 A.2d 737, 741 (1984), where "the error in the trial court's charge so affects the substantial rights of this [defendant] that we will notice the error on appeal despite the lack of proper objection." *State* v. *D'Amico,* 136 Vt. 153, 157, 385 A.2d 1082, 1085 (1978).

The matters here at issue were not totally withheld from the trial court; indeed, they were presented by defendant and were discussed with the trial judge at the charge conference. The erroneous charge on the offenses of voluntary manslaughter and attempted voluntary manslaughter clearly affected the "substantial rights," V.R.Cr.P. 52(b), of this defendant whose entire theory of the case revolved around his argument that these were the very crimes that he had in fact committed. Cf. *State* v. *Gabaree,* 149 Vt. 229, 232, 542 A.2d 272, 273-74 (1988). While the trial court's erroneous charge as to the presumption of innocence as it applies to the degree of guilt or its erroneous transitional charge would not alone constitute plain error, see, e.g., *Catches,* 582 F.2d at 459, we cannot ignore the totality of the improprieties when examining the fairness of defendant's trial. *United States* v. *Grunberger,* 431 F.2d 1062, 1069 (2d Cir. 1970).

For the reasons stated above, a new trial is required on both charges of murder and attempted murder.

*Reversed and remanded.*

**Barney, C.J. (Ret.)**, Specially Assigned, concurring. I concur that a reversal is required in this case based on the errors in the

charge concerning the ground rules for establishing the presence or absence of malice in distinguishing murder from manslaughter. I do wish, however, to question that portion of the opinion not essential to the disposition of the case which gratuitously imports the so-called "Tsanas Rule" into our jurisprudence. See *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), *cert. denied,* 435 U.S. 995 (1978).

It is, at best, only a sometime rule, since it appears to have two possible forms, each of which may, in hindsight, result in error because of poor strategizing on the part of defense counsel. It seems an open invitation for an appeal based on a claim of incompetency of counsel, wherever a conviction occurs in a case where one or the other transitional charges is selected. It also places the trial court in the position of being bound to deliver a certain charge in response to an advocate's strategic judgment, rather than fully delineating the issue to the jury.

When a jury has to deal with a series of included offenses, as in this case, it should be instructed as to its responsibility in the matter. The duty of the jury is to determine the highest level of criminal offense which the jury can unanimously agree is established beyond a reasonable doubt by the evidence. Quite plainly this determination can be approached from two directions. One method is to start with the lowest included offense and move upward through the more serious crimes until the highest offense is found that, in the view of the entire jury, is fully sustained by the evidence, See, e.g., *State* v. *Myer,* 58 Vt. 457, 466-67, 3 A. 195, 200-01 (1886), *overruled on other grounds, State* v. *Burpee,* 65 Vt. 1, 25 A. 964 (1892). Some see a problem with this approach in that the jury, in spite of their instructions, might be inclined to minimize criminality by reaching a verdict short of the most serious established by the evidence.

The second approach is, of course, for the jury to examine the essential elements of the crime that have been established beyond a reasonable doubt, beginning at the level of the most serious charge. The jury would then seek unanimity by moving progressively toward lesser included offenses until total agreement is reached. See, e.g., *State* v. *Long,* 95 Vt. 485, 496, 115 A. 734, 739 (1922). The difficulty seen by some is that the jury might merely return to court in disagreement because they were divided on a more serious charge, rather than going on to explore whether all

the elements of lesser charges were established beyond a reasonable doubt.

The *Tsanas* court resolved the problem as it perceived it by allowing the defense to elect whether to charge the jury to move upward or downward in terms of severity in arriving at the established included offense. This sort of approach seems to show a regrettable lack of confidence in the jury's common sense, or in the ability of a trial court to communicate the problem. Why should an unnecessary issue and possible error be constructed out of the direction from which a jury approaches a problem when logic can sustain either analysis? Is not the better choice one reflecting our oft-stated belief in the fundamental wisdom of the jury and its presumed ability and willingness to comply with the court's instructions? Why not give, in each case, a charge that points out to the jury its basic duty, whatever its manner of proceeding, to properly weigh the evidence as required by law and arrive at a proper verdict. The trial court should make clear to the jury its obligation under the law to seek out the highest level of criminal activity, if any, sustained under the charges brought, by evidence beyond a reasonable doubt.

This result need not be reached under threat of error or in spite of hidden pitfalls because of the mechanical application of a rule requiring the choice of a charge either directing deliberation from the lesser offense upward to the most serious, on in the opposite direction. It is the sound, practical judgment of the jury we seek, applied according to the evidentiary burden on the State, and consistent with presumed innocence. With a full exposition of the jury's duty and the reasoning upon which it is based, I feel certain that juries will continue to function as effectively and fairly as they have in the past. I see no justification for manipulation. I, therefore, would not have adopted the *Tsanas* rule. I am authorized to say that Justice Peck joins in this concurrence.